# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GERALD WEBB,

                    Petitioner,                            Case Number: 04-74579

v.                                            HON. JOHN CORBETT O'MEARA

ANDREW JACKSON,

                    Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Gerald Webb has filed a *pro se* petition for a writ of habeas corpus

under 28 U.S.C. § 2254.  Petitioner is currently incarcerated at the Mound Correctional

Facility in Detroit, Michigan, pursuant to convictions for second-degree murder, unarmed

robbery, and conspiracy to commit armed robbery.  For the reasons set forth below, the

Court denies the petition.

### I.  Facts

The Michigan Court of Appeals set forth the facts relevant to Petitioner's

convictions as follows:

> This case arises out of the shooting death of the victim, Ronald Lasure.
> Morgan Jones shot Lasure on the evening of October 17, 2000.  On that
> date, Lasure arrived at a drug house located at 8515 Strathmoor, collected
> the mail, and spoke to the occupants at the house.  While walking to his car
> after leaving the house, Jones approached Lasure, pointed a .38 caliber
> handgun at him, and demanded money and his keys.  Lasure removed
> money from his pocket and threw it to the ground.  As Jones was picking

the money up, Lasure struggled with Jones for the gun. Jones retained control of the gun just as Markeith Howard arrived in his car. Lasure ran to Howard's car followed by Jones. Jones attempted to shoot Lasure, but the weapon failed to discharge. Howard told Jones to leave. As Jones walked back to the house, Lasure went around and entered his truck. Jones turned back and shot two times at Lasure's truck, shattering the driver's window. Lasure started the truck and drove away, but was later found on the next street on the ground next to his truck, which had collided with a tree. Lasure died of a single gunshot wound to his neck.

Lasure sold drugs out of the house with defendant, Jones, Frederick Abbott, and a person named Patrick. On the afternoon of the shooting, Abbott was at the drug house and overheard a conversation between defendant and Jones regarding Lasure. According to Abbott, defendant told Jones that Lasure had two or three thousand dollars on him, and defendant and Jones wanted to get it. However, defendant stated that he could not rob Lasure because defendant and Lasure knew each other, but that Jones could rob Lasure because the two were not acquainted. Defendant was holding a .38 caliber handgun at the time of the conversation.[1] . . . Defendant and Jones made various phone calls attempting to locate Lasure. When the shooting occurred, defendant was seen standing by the side of the house.

On November 4, 2000, defendant was arrested and interviewed by Detroit Police. During the interview, defendant stated that he, Jones, Abbott, and Patrick were sitting around drinking and Jones started talking about robbing someone. Apparently they had seen Lasure with three or four thousand dollars earlier that day and defendant stated that that money "would put me on my feet." Defendant admitted that he "geeked" Jones to rob Lasure, but did not believe Jones would do it. Defendant placed a telephone call to Lasure and instructed his girlfriend to place a telephone call to Lasure, seeking to have Lasure come to the Strathmoor house to deliver narcotics. According to defendant Lasure eventually arrived, provided the narcotics and left the house followed by defendant. Defendant further stated that Jones then ran out of the house, pointed the gun at Lasure, and demanded Lasure's money and keys. Lasure threw his money on the ground and struggled with Jones for the gun. Defendant indicated that Lasure then ran to Howard's car, and Jones attempted to shoot Lasure, but the gun did not fire. Lasure ran to his truck, and Jones shot at the truck. Defendant

2

claimed that he remained by the side of the house during the shooting.

_____

[1]Another witness testified that he had seen defendant earlier in the week in possession of a .38 caliber handgun.

Webb, slip op. at 1-2.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, unarmed robbery and conspiracy to commit armed robbery.  He was acquitted of first-degree felony murder and armed robbery.

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the following claims through counsel:

> I.    Appellant's convictions must be reversed where the prosecution failed to present sufficient evidence to satisfy the due process standard of guilt beyond a reasonable doubt.

> II.   Appellant was denied a fair trial where the jury was permitted to consider the charge of felony murder even though it was unsupported by legally sufficient evidence, thus resulting in an improper compromise verdict.

Petitioner presented the following additional claim in a pro per supplemental brief:

> III.  Appellant Webb was deprived of his right to effective assistance of counsel guaranteed by the United States and Michigan Constitutions when his trial counsel withdrew his request for instructions that were crucial to the appellant's defense and where he failed to use double jeopardy as a defense to appellant's armed robbery and conspiracy charges and when counsel failed to challenge the lack of malice as reason for a granting of directed verdict of acquittal as to the felony murder charge.

The Michigan Court of Appeals affirmed Petitioner's convictions.  People v.

3

Webb, No. 237028 (Mich. Ct. App. June 17, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,
presenting the same questions presented to the Michigan Court of Appeals.  The
Michigan Supreme Court denied leave to appeal because it was "not persuaded that the
questions presented should be reviewed by this Court."  People v. Webb, 479 Mich. 973
(Mich. Nov. 24, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the
following claims:

> I.    Whether appellant's conviction must be reversed where the prosecution
>       failed to present sufficient evidence to satisfy the due process standard of
>       guilt beyond a reasonable doubt.
>
> II.   Whether appellant Webb was deprived of his right to effective assistance of
>       counsel guaranteed by the United States and Michigan Constitution when
>       his trial counsel withdrew his request for instructions that were crucial to
>       the appellant's defense.

### III.  Analysis

### A.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts
reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an
>       unreasonable application of, clearly established Federal law,

4

as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in
        the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d

429 (6th Cir. 1998).  Additionally, this court must presume the correctness of state court

factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d

167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they

are clearly erroneous").

        The United States Supreme Court has explained the proper application of the

"contrary to" clause as follows:

        A state-court decision will certainly be contrary to [the Supreme Court's]
        clearly established precedent if the state court applies a rule that contradicts
        the governing law set forth in our cases. . . .

        A state-court decision will also be contrary to this Court's clearly
        established precedent if the state court confronts a set of facts that are
        materially indistinguishable from a decision of this Court and nevertheless
        arrives at a result different from [the Court's] precedent.

---

[1]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

        In a proceeding instituted by an application for a writ of habeas
        corpus by a person in custody pursuant to the judgment of a State
        court, a determination of a factual issue made by a State court shall
        be presumed to be correct.

5

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United

States Supreme Court held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause when "a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  Id. at 409.

The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 410-11.

## B.  Sufficiency of the Evidence

In his first claim for habeas corpus relief, Petitioner argues that the prosecutor

presented insufficient evidence to sustain his second-degree murder conviction.

Specifically, Petitioner claims that insufficient evidence was presented to establish the

intent element.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that

the standard of review for a sufficiency of the evidence challenge must focus on whether

6

"after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this court must determine whether the state court applied the correct standard and whether that application was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held, in pertinent part:

> Defendant argues that there was insufficient evidence to support his convictions. We disagree. In reviewing a claim that insufficient evidence was presented to support a conviction, this Court views the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each essential element of the crime was proven beyond a reasonable doubt. People v. Johnson, 460 Mich. 720, 723; 597 N.W.2d 73 (1999) (citations omitted). Circumstantial evidence and any reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of a crime. . . .
>
> First, defendant argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that defendant was guilty of second-degree murder. . . .
>
> . . . To support a conviction of second-degree murder, the prosecution must prove that "defendant caused the death of the victim and that the killing was done with malice and without justification or excuse." People v. Harris, 190 Mich. App. 652, 659; 476 N.W.2d 767 (1991). "Malice" is the

7

required mental state for second-degree murder and is defined as the intent to kill, the intent to do great bodily harm, or the wanton or willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm.  Id.; Feldman, *supra*, at 534.  "Malice may be inferred from the facts and circumstances of the killing," Harris, *supra*, and from evidence that "the defendant intentionally set in motion a force likely to cause death or great bodily harm."  People v. Carines, 460 Mich. 750, 759; 597 N.W.2d 130 (1990).

As it pertains to aiding and abetting, "[a] person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense."  People v. Izarraras-Placante, 246 Mich. App. 490, 495; 633 N.W.2d 18 (2001).  "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission or had knowledge that the principal intended its commission at the time he gave aid and encouragement."  Id. at 495-496 (citations omitted).  "Aiding and abetting" describes all forms of assistance made available to the perpetrator of a crime and includes all words or actions that might support, encourage, or incite the commission of a crime. . . . [I]n this case, it must be shown that defendant had the intent to kill, the intent to do great bodily harm, or wantonly and willfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm. . . .

Here, there was sufficient evidence for a jury to conclude that defendant participated with Jones in the armed robbery of Lasure.  Defendant encouraged and incited Jones to rob Lasure, while in possession of the same type of gun that was used to rob and kill Lasure. . . . Thus, it may be inferred that defendant provided Jones with the weapon used to commit the robbery and kill Lasure.  Indeed, defendant told Jones that Lasure had two or three thousand dollars on him, and that he could not rob Lasure because defendant and Lasure knew each other, but that Jones could rob Lasure because Lasure did not know Jones.  Further, defendant made several calls to Lasure in order to locate him.  By encouraging and inciting an armed robbery, defendant set in motion a force likely to cause death or great bodily harm.  Carines, *supra* at 760.  Although defendant did not necessarily know that Jones was planning on shooting Lasure, both Jones and defendant acted with a willful and wanton disregard of the likelihood

8

> that their behavior would cause death or great bodily harm. . . . The use of a
> gun to commit the robbery is sufficient to infer malice. . . . Therefore, when
> viewing the evidence in a light most favorable to the prosecution, the
> prosecution presented sufficient evidence to support defendant's second-
> degree murder conviction as an aider and abettor.

Webb, slip op. at 3-4.

In light of the evidence presented at trial, the Court finds the state court's disposition of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals cited case law which plainly incorporated the Jackson standard, and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of second-degree murder. Therefore, no relief will be granted on this claim.

## C. Alleged Ineffective Assistance of Counsel

Petitioner next claims that he is entitled to habeas corpus relief because he received ineffective assistance of counsel. Petitioner alleges that his attorney was ineffective in withdrawing his request for the complete standard jury instruction on the scope of a criminal conspiracy and, instead, agreed that the jury would be read only a portion of that instruction.[2] Petitioner argues that if subparagraph (1) of the standard jury

---

[2] The following is Michigan's complete standard jury instruction on the scope of a criminal conspiracy:

> (1) The defendant is not responsible for the acts of other members of the
> conspiracy unless those acts are part of the agreement or further the purposes of

9

instruction had been given to the jury, he would not have been convicted of second-degree murder.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  Id. at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  "[T]he focus should be on whether

---

the agreement.
(2) If the defendant agreed to commit a completely different crime, then [he/she] is not guilty of conspiracy to commit _____.
(3) A person who joins a conspiracy after it has already formed is only responsible for what [he/she] agreed to when joining, not for any agreement made by the conspiracy before [he/she] joined. [You may consider evidence of what other members of the alleged conspiracy did or said before the defendant became a member, but only in order to determine the nature and purpose of the conspiracy after the defendant joined.]
(4) Members of a conspiracy are not responsible for what other members do or say after the conspiracy ends.

CJI2d 10.4

the result of the trial was 'fundamentally unfair or unreliable.'" <u>Tinsley v. Million</u>, 399

F.3d 796, 802 (6th Cir. 2005), *quoting* <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

The Michigan Court of Appeals held that Petitioner's attorney was not ineffective

because the instruction adequately conveyed to the jury the concept of a criminal

conspiracy and aiding and abetting and Petitioner failed to show a reasonable probability

that the result of the proceeding would have been different had the full instruction been

given.  The Court finds that the Michigan Court of Appeals' decision was not contrary to

or an unreasonable application of Supreme Court precedent.  Therefore, habeas relief

shall be denied on this claim.

### IV.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge


Dated:  February 16, 2006

11